
RECEIVED
DEC 29 2005
ROBERT H. SH...
WE...
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| FREDERICK ROBB obo TERRI ROBB | CIVIL ACTION NO. 02-2492 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on September 23, 1958, Terri Robb ("Robb") was 43 years old when she died on May 27, 2002 of causes unrelated to this disability claim.[1] Robb's husband, Frederick Robb, has been substituted as the appellant. Robb had a high school education and worked for nineteen years as a licensed practical nurse. Prior to her death, Robb had applied for disability benefits and supplemental security income alleging disability since August 17, 1998 due to back and leg pain.[2] Subsequently, Robb also alleged that she suffered from depression.[3]

Following an administrative hearing, the ALJ rendered an unfavorable decision on April 20, 2001,[4] which was affirmed by the Appeals Council and was then appealed to this court.

---

[1] Tr. 108.

[2] Tr. 102-107, 116.

[3] Tr. 14.

[4] Tr. 44-54.

The Commissioner determined that Robb's claim file had been lost, and therefore, the Commissioner filed an unopposed motion to remand, which was granted on June 18, 2003.[5]

A supplemental hearing was held on April 7, 2004.[6] In an opinion dated June 18, 2004, the ALJ found that from the date of Robb's application to her death, Robb was able to perform sedentary work.[7] Applying the Medical Vocation Guidelines, the ALJ concluded that Robb was not disabled, and Robb timely filed this appeal.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

---

[5] Rec. Doc. 93.

[6] Tr. 29-41.

[7] Tr. 16.

3

*Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.[8]

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e)

---

[8] "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir.1985).

provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[9]

In the instant case, the ALJ determined that Robb's low back problem was a severe impairment.[10] The ALJ assessed Robb's residual functional capacity ("RFC") and concluded that she could perform all exertional levels of sedentary work. Applying the Medical Vocational Guidelines, the ALJ concluded that Robb was not disabled.

### *Assignment of Errors*

Robb alleges the following grounds for appeal: 1) the ALJ erred in relying on a medical report that was not signed by the consultative examiner; 2) the ALJ failed to accord proper weight to Robb's treating physician's opinion; 3) the ALJ erred in not finding that Robb's depression a severe impairment; 4) the ALJ erred in not calling a vocational expert to testify.

---

[9] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities*. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[10] Tr. 13.

## *Medical History*

Robb had a history of low back pain. From 1997-1999, she was treated by Dr. Howard Alleman, a general practicioner, for sciatic nerve pain and prescribed Lortab pain medication.[11] Dr. Alleman noted that Robb was suffering from depression.

On November 13, 1997, a CT scan showed a herniated disc at L5-S1.[12] On February 26, 1998, Robb was examined at Abbeville General Hospital, complaining of low back pain.[13] X-rays of the lumbar spine showed possible muscle spasm, but were otherwise normal. On March 25, 1998, a report from University Medical Center shows that Robb was diagnosed with back pain with nerve impingement.[14]

In April, 1998, Robb was examined at Abbeville General for acute sciatica. An MRI of the lumbar spine showed a mild L4-L5 annulus bulge with "significant pressure on the dural sac."[15] Robb was seen at Abbeville General repeatedly throughout 1998 and 1999, complaining of severe low back pain radiating into her legs.[16] Robb was described as being in "obvious distress."[17] In December, 1999, Robb was involved in an automobile accident and injured her neck.[18] Cervical x-rays were normal.

---

[11] Tr. 152-153.

[12] Tr. 207.

[13] Tr. 169.

[14] Tr. 202.

[15] Tr. 168.

[16] Tr. 160-167.

[17] Tr. 167.

[18] Tr. 158-159.

In 1998, Robb was examined by Dr. Corbett LeBouef, a family practicioner, for low back pain.[19] Dr. LeBouef continued Robb on pain medication and examined her monthly. On March 9, 1999, Dr. Leboeuf signed a note stating, "The above is presently disabled and unable to work."[20] On June 7, 1999, Robb complained of burning pain and a tingling sensation in her right leg.[21] After her automobile accident in December 1999, Robb was examined by Dr. LeBouef and advised that she was experiencing neck and shoulder pain, and that the accident exacerbated her lumbar pain.[22] In March, 2000, Dr. LeBouef noted that Robb's neck pain had improved, however, back and leg pain continued to present problems for her. Dr. LeBoeuef noted spasms and that Robb described her legs as burning and stinging.[23]

On June 14, 1999, at the request of Disability Determination Services ("DDS"), Robb was examined by Dr. Jose Zavaleta, an anesthesiologist trained in Peru with no Board Certification.[24] Dr. Zavaleta issued a report entitled "Orthopedic Type Evaluation."[25] The report was not signed by Dr. Zavaleta, but "for" Dr. Zavaleta by someone whose signature is illegible.[26] The report states:

---

[19] Tr. 220.

[20] Tr. 213.

[21] Tr. 218.

[22] Tr. 216.

[23] Tr. 214.

[24] Tr. 250.

[25] Tr. 154-157.

[26] Tr. 157.

> The patient appeared to be non-cooperative with the examination and it seems to me as if she was exaggerating her symptoms. It is difficult to say with this patient but I think that she is still able to engage in gainful activity. I think that this patient is still able to lift and carry weights up to 15 lbs and she can do sedentary types of work. It is difficult to give a prognosis because this patient still did not receive treatment and she could improve if she would do so.[27]

On April 5, 2000, Robb began treatment at Medical Center of Louisiana at New Orleans for low back pain and underwent a discogram.[28] On July 20 and September 23, 2000, Robb underwent "Right S1 Selective Epidural Steroid Injection."[29] On June 21, 2001, Robb underwent a right L3-4 medial branch bock and right L5-S1 facet joint injection.[30] The reason for this procedure was "Secondary to facet joint disease at right L5-S1 region." On July 11, 2001, it was noted that although Robb had relief from one injection, the pain recurred and after other injections she did not have any relief from the pain, resulting in a notation that "patient failed multiple injections."[31] On September 6, 2001, Robb was referred by the pain clinic to undergo a therapeutic L4-5 diskogram to try to relieve her pain.[32]

The January 30, 2002, notes from Medical Center of Louisiana at New Orleans state, "low back pain - facetagenic R S1 radiculopathy."[33] Robb reported that her pain increased with sitting, standing and was relieved by lying down. Treatment notes from 2002 also summarize

---

[27] Tr. 157.

[28] Tr. 263.

[29] Tr. 261, 269-271.

[30] Tr. 305.

[31] Tr. 325.

[32] Tr. 307.

[33] Tr. 315.

Robb's condition: she had low back pain since 1997; she had to stop working due to pain; steroid injections failed; decreased range of motion in back; sensory at L2-L3 was decreased; pain radiates to her right leg; physical therapy, exercise, TENS, and massage did not relieve pain; the only thing that helped pain was Lortab.[34] It was also noted that an MRI taken August, 2001 showed herniated disc at L4-L5.[35]

On May 22, 2002, five days before her death, Robb reported severe low back pain and it was noted that she had severe limitation of lumbar range of motion.[36] Robb was prescribed a cane and told to continue MS Contin, which is "a controlled-release tablet containing morphine."[37]

During the course of her treatment at the Medical Center of Louisiana, Robb was treated at the psychiatric clinic for depression.[38] Robb was cooperative and her depression was secondary to her pain.[39] She was prescribed Elavil.

### *Findings and Conclusion*

The record shows that Robb was treated consistently for severe low back pain from the date of her alleged onset of disability, August 17, 1998, to her death on May 27, 2002. The objective medical evidence in the record establishes that Robb had herniated discs at L4-L5 and

---

[34] Tr. 311.

[35] The record does not include the MRI results but there are three notations to the results. Tr. 311, 322, 380.

[36] Tr. 380.

[37] *See* http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/msc1277.shtml.

[38] Tr. 314, 323, 324, 328.

[39] Tr. 324.

L5-S1.[40] During this time, Robb underwent a series of injections which were unsuccessful at relieving her pain. She was prescribed potent pain medications at virtually every medical examination. She continued to complain of severe, unrelenting pain. The ALJ concluded, however, that Robb's claims of disabling pain were not credible "based on Dr. Zavaleta's observation of exaggeration of her symptoms."[41] In fact, Dr. Zavaleta found only that Robb "appeared to be non-cooperative" and "seems . . . as if she was exaggerating."[42] The ALJ, relying on Dr. Zavaleta's report, concluded that Robb had the residual functional capacity to perform sedentary work. After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

1. **Reliance on unsigned medical report**

Frederick Robb maintains that the ALJ erred in relying on Dr. Zavaleta's report because it was not properly signed by Dr. Zavaleta.

A review of Dr. Zavaleta's report shows that it was not signed by Dr. Zavaleta, but rather by another doctor "for Jose G. Zavaleta, M.D."[43] Title 20 C.F.R. § 416.1519n(e) requires all consultative examination report to be "personally reviewed and signed by the medical source who actually performed the examination." This requirement attests to the fact that the examining medical source is solely responsible for the report contents and conclusions. "A rubber stamp

---

[40] Tr. 168, 202, 311, 380.

[41] Tr. 14.

[42] Tr. 157.

[43] Tr. 157.

signature or the medical source's signature entered by any other person is not acceptable." Title 20 C.F.R. § 416.1519o provides that benefits cannot be denied based on an unsigned report from a consultative examination. Further, although there is no analogous Fifth Circuit case, other courts have "interpreted this regulation as preventing an ALJ from considering an unsigned medical report." Bergfeld v. Barnhart, 361 F.Supp.2d 1102 (D. Az 2005), *citing* Scott v. Shalala, 898 F.Supp. 1238 (N.D. Ill. 1995); Rogers v. Massanari, 226 F.Supp.2d 1040 (E.D. Mo. 2002). Robb's counsel noted this deficiency to the Appeals Council, however, the Commissioner did not attempt to correct the problem by obtaining a signed report from Dr. Zavaleta.

Since Dr. Zavaleta's report was not signed by the doctor who actually performed the examination, and the Commissioner did not obtain a properly signed report, the undersigned concludes that the ALJ erred in relying on the report.

2. **Weight accorded to treating physicians' opinions**

Frederick Robb argues that the ALJ erred in disregarding Dr. LeBouef's conclusion that Robb was unable to work due to her chronic back pain.

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th cir. 1990). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ is certainly able to decrease reliance on treating physician testimony for good cause. Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).

"Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" Id.[44]

Dr. LeBouef, Robb's treating physician, concluded that Robb was disabled and could not work. The ALJ discounted Dr. LeBouef's opinion because "Dr. LeBouef's opinion is not supported by the other medical evidence. The only positive finding from any diagnostic study is a mild bulge in the low back from the MRI in April 1998."[45]

The ALJ's statement that there were no other diagnostic findings other than the April, 1998 MRI is incorrect. As detailed above, a 1998 CT scan showed a herniated disc at L5-S1 and an MRI taken in August, 2001 showed a herniated disc at L4-L5.[46] Moreover, the record is replete with objective clinical findings supporting Dr. LeBouef's opinion: facet joint disease, muscle spasm, and limited range of motion.[47] This evidence is also supported by the medical records evidencing the serious steps taken by physicians, in addition to Dr. LeBouef, to relieve Robb's pain: steroid injections, discograms, and continuous pain medication. Thus, the ALJ erred in concluding that Dr. LeBouef's opinion was not supported by objective evidence.

---

[44] Further, the ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The opinion of a treating physician on this issue is not entitled to controlling weight, although it should be given appropriate weight depending on whether it is supported by the medical record. 20 C.F.R. Sec. 416.927 (e) (1988).

[45] Tr. 12.

[46] Tr. 311, 322, 380.

[47] Tr. 169, 214, 305, 315, 380.

Accordingly, the undersigned concludes that the ALJ erroneously discounted Dr. LeBouef's opinion, which is not contradicted by the medical evidence, that Robb's pain precluded work activity.

3.  **Allegations of disabling pain**

Frederick Robb argues that the ALJ erred in dismissing Robb's allegations of disabling pain based on the ALJ's determination that "there is no underlying disease process" to support the allegations.

The Fifth Circuit has held that pain, in and of itself, can be a disabling condition, but only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991). The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

The ALJ found that Robb was only partially credible and that there was no underlying disease process which formed a basis for her allegations of disabling pain. The basis for the ALJ's determination that Robb was not credible was Dr. Zavaleta's conclusory comment that "it

seems to me as if she was exaggerating her symptoms."[48] As indicated above, the ALJ erred in relying on Dr. Zavaleta's report because it was not properly signed. Moreover, even if Dr. Zavaleta's report was competent evidence, the ALJ misquoted Dr. Zavaleta, who stated that is "seems . . . as if she was exaggerating."[49] Further, it is clear from the record that Robb's treating physicians considered her to be in severe pain that required serious pain medication (Morphine and Lortab) and even required the use of a cane.

Moreover, the ALJ erred in determining that there was no underlying disease process supporting Robb's allegations of pain. The medical records contain objective findings of disc herniation and facet joint disease. Moreover, the medical evidence supports Robb's allegations of disabling pain. The medical records contain overwhelming evidence that Robb had chronic unrelenting back pain. On examination, she had muscle spasm and limited range of motion.[50] Although the Commissioner notes that on two occasions physicians noted that Robb had positive Waddell signs indicating that one or more physical complaints may not be caused by physical abnormality, this is far from evidence sufficient to cast doubt on the records supporting Robb's allegations..[51] Robb's medical record is over 230 pages and there are only two citations to positive Waddell signs. Absent additional explanation concerning the basis for these notations and the impact, if any, of Waddell signs on the physician's opinion, the undersigned concludes

---

[48] Tr. 157.

[49] Tr. 157.

[50] Tr. 169, 214, 305, 315, 380.

[51] Tr. 232 and 313. Waddell signs indicate that one or more complaints of pain are not caused by physical abnormality. Attorneys Medical Deskbook 3d § 11:2 (1993).

14

that these passing references are not sufficient to undermine the persistent complaints of disabling pain.

Considering the objective evidence supporting Robb's complaints, and the fact that her pain was unresponsive to repeated steroid injections and discograms, the undersigned concludes that the ALJ erred in discounting Robb's allegations of disabling pain.

3. **Severity finding**

Frederick Robb maintains the ALJ erred in determining that Robb's depression was not a severe impairment.

At Step 2 the ALJ concluded that Robb's depression was not a severe impairment because it was secondary to her pain: "Any mental problem was caused by her physical complaints."[52] The ALJ did not "identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment." Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished). Under Fifth Circuit jurisprudence, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), *citing* Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). Further, the Fifth Circuit stated that courts are to "assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement

---

[52] Tr. 13.

unless the correct standard is set forth by reference to this opinion or another of the same effect...." Stone, 752 F.2d at 1106; Loza v. Apfel, 219 F.3d 378, 393 (5th Cir.2000) ("The ALJ did not set forth the standard as it was construed in *Stone*, refer to *Stone* or another decision of this court to the same effect, or expressly state that the construction this court gives to 20 C.F.R. § 404.1520(c) was used. Consequently, in accordance with our holding in *Stone*, we must assume that the ALJ and Appeals Council applied an incorrect standard ....")

Here, the ALJ did not cite or otherwise apply the Stone standard in determining the severity of Robb's impairments. Thus, the ALJ applied the incorrect standard.

Although Robb was diagnosed with depression and prescribed medication, the medical evidence does not include specific information regarding the effect the depression had on Robb's ability to perform work activities.[53] Title 20 C.F.R. § 404.1512(e) requires the ALJ to recontact medical sources when their opinions do not provide sufficient information for the ALJ to determine disability status and the ALJ has the discretion to order a consultative examination. Jones v. Bowen, 829 F.2d 524 (5th Cir. 1987). Considering that Robb had been diagnosed with depression and had undergone psychological counseling, the undersigned concludes that the ALJ erred in not obtaining additional information prior to dismissing Robb's depression as non-severe.

### 4. **Vocational expert testimony**

After concluding that Robb could perform sedentary work, the ALJ applied the Medical Vocational Guidelines and concluded that Robb was not disabled. Frederick Robb maintains that since Robb had severe pain that affected her ability to sit, stand, walk, and bend, the ALJ was

---

[53] Tr. 314, 323, 324, 328.

precluded from relying on the Medical Vocational Guidelines and was required to obtain the testimony of a vocational expert in determining whether she was disabled.

The Medical-Vocational Guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria. Use of the guidelines in appropriate cases has been approved by the United States Supreme Court. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1983). Thus, the Commissioner is relieved in certain cases of the burden of calling a vocational expert to testify about a claimant's ability to perform other substantial gainful activity. However, when non-exertional limitations are shown, a disability decision cannot be made solely on the basis of the vocational guidelines. Martin v. Heckler, 748 F.2d 1027 (5th Cir.1984). 20 C.F.R. Chapter III, Subpart P, Appendix 2, 200.00(e) provides:

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., and inability to tolerate dust or fumes.

Here, the ALJ's application of the guidelines did not include an assessment of the implication of Robb's nonexertional limitations, i.e., the limitations imposed by her pain. These nonexertional limitations precluded the application of the guidelines. Therefore, I find that the ALJ's application of the Medical-Vocational Guidelines was in error and the finding of not disabled is not supported by substantial evidence.

## *Conclusion*

The undersigned concludes that the ALJ erred in the following respects: 1) relying on an unsigned consultative examination report; 2) discounting Robb's treating physician's opinion that Robb's pain precluded work; 3) failing to find Robb's pain disabling; 4) finding that Robb's depression was not severe by applying the incorrect standard and without obtaining additional information; and 5) relying on the Medical Vocational Guidelines.

Remand is appropriate only upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court." Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981).

The record shows that Robb had severe unrelenting pain that precluded her from performing work activities. Because I find that Robb's allegations of disabling pain were supported by her treating physician and are uncontradicted by the medical evidence of record, it is not necessary to remand the case. Accordingly, it is recommend that the Commissioner's decision be **REVERSED** and Robb be awarded benefits for the period covering August 17, 1998 to May 27, 2002.[1]

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

---

[1] This is the period covering the date of her onset to the date of her death. This constitutes a "final judgment" that triggers the filing period for an EAJA fee application. Shalala v. Schaeffer, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); Freeman v. Shalala, 2 F.3d 552 (5th Cir. 1993).

18

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on December 29, 2005.

COPY SENT
DATE 12-29-05
BY: CMB
TO: MEM
   TLM | PJ

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)